**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SHONEY'S NORTH AMERICA, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:12-cv-00625** |
| | ) | |
| | ) | **Chief Judge Sharp** |
| **SMITH & THAXTON, INC., BALLARD G.** | ) | **Magistrate Judge Knowles** |
| **THAXTON and ANDRE SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the Court are the plaintiff's objections (ECF No. 71) to the Report and Recommendation (ECF No. 68) filed by Magistrate Judge Cliff Knowles, recommending that the plaintiff's Renewed Motion for Summary Judgment (ECF No. 41) be denied.

After being served with a magistrate judge's recommended disposition, any party may, within fourteen days, "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The plaintiff, Shoney's North America, LLC ("SNA") has lodged proper objections to each of the magistrate judge's findings and proposed ruling, and the Court has therefore conducted a *de novo* review of the record and the plaintiff's motion. For the reasons set forth herein, the Court will reject the magistrate judge's disposition and grant the plaintiff's motion for summary judgment. The Court deems the federal claims on which the plaintiff did not seek summary judgment to be abandoned and will dismiss those claims, but will enter final judgment in favor of the plaintiff on its state-law breach-of-contract claims against all defendants. The plaintiff's motion for a default judgment against defendant Andre Smith will be denied as moot, and this matter dismissed.

I.      **Introduction and Procedural Background**

SNA filed the instant action on June 20, 2012 against defendants Ballard G. Thaxton, Andre M. Smith, and their company, Smith & Thaxton, Inc. ("S&T"), invoking this Court's jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1338 (trademarks and unfair competition), and 1331 (diversity). (Complaint, ECF No. 1.) The plaintiff alleges that S&T entered into two identical License Agreements with its predecessor in interest, Shoney's, Inc., which granted S&T the right to establish and operate two Shoney's® family restaurants and to use the Shoney's trademarks and service marks in connection with the operation of the Shoney's® restaurants. The plaintiff alleges that, in connection with the License Agreements, Mr. Thaxton and Mr. Smith executed Guaranty Agreements pursuant to which they jointly and severally guaranteed the performance of S&T's obligations under the terms of the License Agreements. The complaint asserts that the defendants breached the License and Guaranty Agreements and infringed SNA trademarks and service marks in violation of the common law and federal law, specifically Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a).

Mr. Thaxton and Mr. Smith secured counsel to represent both the corporate entity and themselves individually. Counsel filed a timely answer to the complaint, denying liability and raising affirmative defenses.

On December 10, 2012, SNA filed its original Motion for Summary Judgment, along with a supporting Memorandum of Law with Exhibits, Statement of Undisputed Material Facts, and the Declaration of Catherine Hite. (ECF Nos. 20–23.) On December 14, 2012, the defendants filed a Motion to Stay, invoking the dispute-resolution procedure set out in Section 18.H of the License Agreements. While the motion to stay was still pending, the defendants filed their response in opposition to the original motion for summary judgment and a response to the statement of undisputed facts. (ECF Nos. 29, 30.) Defense counsel then filed a motion to withdraw.

The Court granted the motion to stay on January 30, 2013, pending the parties' compliance with the dispute-resolution terms of the License Agreements. (ECF No. 37.) In the same order, the Court granted defense counsel's motion to withdraw and denied as moot all other pending motions, including the plaintiff's motion for summary judgment, in light of the stay.

The Court lifted the stay on June 6, 2013 pursuant to the plaintiff's unopposed motion representing that the parties had complied with Section 18.H(3) but had been unable to negotiate a resolution of their dispute. Thereafter, SNA filed its Renewed Motion for Summary Judgment (ECF No. 41), a one-page document that essentially incorporates by reference its original motion and supporting materials. As previously stated, the magistrate judge recommends that the motion be denied on the basis of disputed issues of fact, and the plaintiff filed objections to the magistrate judge's findings and conclusions.

During the pendency of these proceedings, Mr. Ballard G. Thaxton passed away (ECF No. 49) and was terminated as a party to this action (ECF No. 52). The Court subsequently granted the plaintiff's motion to substitute party, substituting Mr. Thaxton's wife, Brenda K. Thaxton, in Mr. Thaxton's place. For clarity, however, the Court will continue to refer to Ballard Thaxton as a defendant.

The defendants have never retained new counsel after the withdrawal of their first attorney. The corporate defendant, S&T, cannot represent itself *pro se*. Even after being directed in November 2013 to retain counsel within 30 days and warned that failure to retain counsel could result in entry of default, S&T nevertheless failed to retain counsel. The Clerk entered default against S&T in March, 2014, and entered default judgment against the corporate defendant on May 2, 2014 in the amount of $59,430.27, plus prejudgment interest in the amount of $168.20 and post-judgment interest at the statutory rate.

The individual defendants still have not retained counsel; default has been entered against defendant Andre Smith, and plaintiff's motion for default judgment against Mr. Smith is pending. (ECF No. 103).

Although the defendants did not file a response in opposition to the renewed motion for summary judgment, the Court will consider the documents filed in response to the original motion for summary judgment, since the renewed motion simply incorporates by reference the original motion and supporting documentation.

## II. Factual Background

On or about January 20, 2003, S&T entered into a License Agreement with Shoney's Inc., a corporate predecessor of plaintiff Shoney's North America, LLC, for the operation of a Shoney's® restaurant located in Farmville, Virginia (the "Farmville License Agreement"). (Compl. Ex. 2.) The

Farmville License Agreement specifically required that any person or entity holding a direct or indirect ownership interest of 10% or more in S&T would be required to execute the Guaranty Agreement attached as an exhibit to the License Agreement. (Compl. Ex. 2, Farmville License Agreement § 13, ECF No. 1-2.) Defendants Andre Smith and Ballard Thaxton, as "Guarantors," executed the Guaranty Agreement attached as Exhibit B to the Farmville License Agreement. The Guaranty Agreement provides that the Guarantors "guarantee the timely performance of all of the obligations" of S&T under the License Agreement, "including the prompt payment when due of all license fees, royalty fees, and production and regional co-op fund contributions." (Guaranty Agreement § 1, ECF No. 1-2, at 42.)

Also on January 20, 2003, S&T entered into an identical License Agreement for the operation of a Shoney's® restaurant in South Boston, Virginia (collectively with the Farmville License Agreement, the "License Agreements"), which is also accompanied by an identical Guaranty Agreement (collectively with the Farmville Guaranty Agreement, the "Guaranty Agreements"). (Compl. Ex. 3, ECF No. 1-3.)

Section 12.A of the License Agreements expressly provides that the Agreements are "fully transferable by [Shoney's, Inc.] and will inure to the benefit of any transferee or other legal successor to [Shoney's, Inc.'s] interests in th[e] Agreement[s]." The defendants aver, and the plaintiff does not dispute, that Shoney's North America Corp. ("SNAC") acquired all of the trademarks and rights associated with the Shoney's® brand in January 2007, pursuant to which Shoney's, Inc. assigned all of its rights in the License Agreements and Guaranty Agreements to SNAC. In January 2012, SNAC converted from a corporation to a limited liability company and became Shoney's North America, LLC, the plaintiff in this action.[1]

In a letter dated February 7, 2012, SNA sent S&T a "Notice of Termination," asserting that it had become aware that the S&T was in default of the License Agreements as a result of its having closed the

---

[1] The information regarding the relationship between Shoney's, Inc., SNAC and SNA has not been presented to the Court in an admissible form for purposes of a motion for summary judgment. The plaintiff provided no information whatsoever about its purchase of Shoney's, Inc.'s interest in the License Agreements or any subsequent change to its corporate form. The defendants included this information in the body of their response in opposition to the plaintiff's motion for summary judgment. (ECF No. 29, at 8 & n.4.) In their memorandum, the plaintiff simply represents in a parenthetical clause that Shoney's, Inc. is SNA's predecessor in interest (ECF No. 21, at 8), and in its reply brief states that SNA acquired Shoney's, Inc. in 2007 (ECF No. 33, at 7). In any event, there appears to be no dispute that SNA is the corporate successor to Shoney's, Inc., and that Shoney's, Inc. validly transferred its rights and interests under the License Agreements to the plaintiff.

Farmville and South Boston Shoney's® restaurants on January 27, 2012, without SNA's prior consent. SNA gave notice that it was exercising its right under Section 15.B(2)[2] to terminate the License Agreements immediately as a result of such default. (Compl. Ex. 4, Feb. 7, 2012 Notice of Termination, ECF No. 1-4.) In its Notice of Termination, SNA demanded payment of liquidated damages in the amount of $56,500.35 pursuant to Section 16 of the License Agreements, plus an additional $2,929.92 in fees incurred pursuant to Section 17.B of the License Agreements, for total damages of $59,430.27. SNA also demanded that S&T "de-identify the Restaurant[s] by removing all signs (on premise and billboard/directional signs) and any identifying marks indicating that the location was a Shoney's Restaurant" and to provide "photographic evidence of de-imaging within thirty (30) days." (*Id.*)

Attached to the Notice of Termination was an Accounts Receivable Detail dated February 2, 2012, itemizing the damages and showing how they were calculated. In support of its motion for summary judgment, SNA submitted the declaration of Catherine Hite in her capacity as Executive Vice President and General Counsel for the plaintiff, in which Hite avers that the documentation attached to the Notice of Termination is true and correct and that defendants owe the amounts stated in the Accounts Receivable Detail. In their response in opposition to the plaintiff's motion, the defendants do not dispute Hite's calculation of liquidated damages in accordance with the terms of the License Agreements. Rather, they dispute liability generally and insist that "the liquidated damages sought by the plaintiff are unenforceable penalties they [the defendants] have no obligation to pay." (Defs.' Resp. to Pl.'s Statement of Undisp. Facts ¶ 6, ECF No. 30.) Likewise, the defendants purport to "dispute" the fee amounts due under Section 17.B of the License Agreements, but they do not state the basis for their dispute, offer documentation in support of this dispute, or identify what portion of the amount they dispute. Although they contest their obligation to pay the amount SNA claims is due, the defendants concede that the termination provision of the License Agreements was properly evoked and that they have not paid any portion of the disputed sum to SNA. (Answer ¶ 32, ECF No. 17.)

---

[2] Section 15.B(2) provides for immediate termination by SNA upon written notice in the event that the licensee "discontinues operating the Restaurant as a Shoney's restaurant for more than one day without [SNA's] prior written consent, or abandon, surrender or transfer control of the Restaurant without [SNA's] prior approval."

III.    **Motion for Summary Judgment**

As set forth above, default judgment has already been entered against defendant S&T in the amount sought by SNA in its complaint, plus pre- and post-judgment interest. The motion for summary judgment thus effectively seeks only to enforce the Guaranty Agreements executed by defendants Andre Smith and Ballard Thaxton (hereafter, the "defendants"). SNA contends that these defendants are liable to it under the Guaranty Agreements for the damages owed by S&T under the License Agreements, specifically $56,500.35 in early-termination liquidated damages pursuant to Section 16 of the License Agreements, and $2,929.92 in "other unpaid monetary obligations" pursuant to Section 17.B of the License Agreements.[3]

In the instant motion for summary judgment and supporting materials, SNA asserts:

> Defendants do not dispute that the License Agreements are enforceable. Nor do they dispute what the License Agreements say; or that they breached the terms of those License Agreements. Rather, the sole issue in this case is whether the liquidated damages provision contained at Section 16 of the License Agreements is enforceable.

(ECF No. 21, at 1.)

SNA contends that the defendants' assertion in their answer that the liquidated damages payable under the Agreement are not reasonable and are therefore unenforceable "collapses under the weight of (1) the law; (2) the intentions of the parties as memorialized in the terms of the License Agreements; and (3) a comparison of Shoney's' liquidated damages to its actual damages in this case." (*Id.* at 1–2.) The plaintiff argues that the liquidated-damages provision found in Section 16 of the License Agreements "is enforceable as a matter of Tennessee law because the parties intended it to estimate potential damages, and because it does not result in damages that are grossly disproportionate to the actual damages Shoney's has incurred." (*Id.* at 5.) SNA argues that the liquidated-damages provision is not a penalty, but rather, is a "fair and reasonable" "prospective estimate of difficult-to-calculate damages" that was contemplated by the parties at the time the contract was entered, and is proportional to Plaintiff's actual

---

[3] In its Complaint, SNA also claims that the defendants continue to use its marks and trade dress in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a). The complaint further avers that the defendants' continued unauthorized use of NSA's marks causes and will continue to cause a likelihood of dilution and disparagement of the distinctive quality of the Shoney's marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c). The plaintiff did not move for summary judgment as to its Lanham Act claims.

damages incurred by Defendants' breach. (*Id.* at 7.)

SNA contends that, at the time of contracting, the defendants "expressly acknowledged and agreed that [Section 16] was fair and reasonable." (*Id.* at 9–10.) SNA argues that there is no dispute that "Section 16 has operated precisely as the parties contemplated and agreed." (*Id.* at 10.) SNA asserts that there is no dispute that "Section 16 awards Shoney's only a fraction of the actual damages it would otherwise be entitled to receive." (*Id.*) Although it does not submit admissible evidence to support the statement, SNA asserts that, if the defendants had not breached the License Agreements, it would have been entitled to recover royalties and other fees for approximately 11 more years, which would have totaled over $600,000. (*Id.* at 8.) Accordingly, SNA maintains that it is entitled to summary judgment awarding it $56,500.35 in liquidated damages under Section 16 of the Licensing Agreement.

SNA also contends that it is "contractually entitled to the amounts owed under Section 17.B of the Licensing Agreements," in the amount of $2,929.92. (*Id.*) Section 17.B of the Agreements entitles SNA to repayment within 15 days of termination of the License Agreements of any "royalty fees; production and regional co-op fund contributions; amounts owed . . . for . . . purchases . . . and any other amounts owed." (*Id.* (ellipses original).) SNA contends that the defendants do not dispute that they have not paid the amount owed under Section 17 of the Agreement and that it is entitled to summary judgment on this issue as well, awarding it an additional $2,929.92. (*Id.*)

The defendants filed a response in opposition to the plaintiff's original motion (ECF No. 29) prior to their counsel's withdrawal, arguing that:

(1) the Court lacks jurisdiction over the matter;

(2) Sections 16 and 18(I) of the License Agreements conflict with each other, thereby creating an ambiguity about recoverable damages;

(3) there remains a question of fact regarding whether the liquidated damages sought by SNA "were a reasonable forecast estimate of damages that the franchisor would incur in the event of the termination of the license agreement prior to the end of its term" (*id.* at 5);

(4) the declaration of Catherine Hite is inadequate to support the plaintiff's damages claim;

(5) although the License Agreements were clearly transferable by Shoney's, Inc., the Guaranty Agreements do not include a transferability provision and are therefore not enforceable by SNA; and

(6) the plaintiff has failed to overcome the defendants' asserted affirmative defenses.

The defendants maintain, in sum, that there are disputed issues of fact that must be determined by a jury and that the plaintiff's motion should therefore be denied.

SNA filed a Reply (ECF No. 33) addressing each of the defendants' arguments.

## IV.    Objections to the Report and Recommendation

Magistrate Judge Knowles filed a Report and Recommendation containing a thorough and detailed recitation of the facts and the parties' positions and arguments and characterizing the issues to be resolved as follows:

> (1) whether the liquidated-damages provision is a penalty or is a fair and reasonable prospective estimate of damages that was contemplated by the parties at the time of contracting; (2) whether Sections 16 and 18(I) conflict with each other and create an ambiguity regarding recoverable damages; (3) whether the Guaranty Agreements were stand-alone agreements or incorporated as part of the License Agreements, such that they were transferred to SNAC when SNAC acquired from Shoney's Inc. all of the trademarks and rights associated with the Shoney's brand, including the franchisee owned Shoney's restaurants at the heart of this action; and (4) whether the individual Defendants can be held liable to SNAC via the Guarantee Agreements.

(ECF No. 68, at 13.) The magistrate judge then concluded, without reference to legal authority, that summary judgment should be denied on the basis that the defendants had successfully identified disputed issues of material fact with regard to "the four primary issues outlined above," including:

> 1. Smith & Thaxton, Inc. entered into two License Agreements with Shoney's, Inc., not Shoney's North America, LLC, and neither individual Defendant executed those agreements.
>
> 2. The individual Defendants entered into Guaranty Agreements guaranteeing the performance of Smith & Thaxton, Inc.'s obligations to Shoney's, Inc., not Shoney's North America, LLC.
>
> 3. Defendants dispute liability and assert that the liquidated damages sought by Plaintiff are unenforceable penalties that neither Smith & Thaxton, Inc., nor the individual Defendants have any obligation to pay.
>
> 4. Defendants dispute the amounts allegedly owed.

(*Id.* at 14 (citing ECF No. 30.) The magistrate judge therefore recommended that summary judgment be denied.

SNA filed its timely objections to the Report and Recommendation, asserting that the arguments raised by the defendants are precluded by the plain language of the License Agreements and the undisputed record and should be resolved as a matter of law in favor of SNA. More specifically, SNA's

objections are as follows:

> 1. "The Magistrate Judge erred in finding that factual issues with regard to whether liquidated damages sought by Shoney's are unenforceable penalties under Tennessee law." (ECF No. 71, at 2.)
>
> 2. "The Magistrate Judge erred in finding that a genuine dispute exists as to the amount of liquidated damages sought by Shoney's." (*Id.* at 5.)
>
> 3. "The Magistrate Judge erred in finding that the Guaranty Agreements are not enforceable against the Individual Defendants as a matter of law." (*Id.* at 6.)

In other words, the plaintiff disputes each finding upon which the magistrate judge's recommendation is premised. In light of these objections, the Court will consider *de novo* the plaintiff's motion for summary judgment.

## V.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When sitting in summary judgment, a court must draw all justifiable inferences from the evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Thus, the Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more

than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251–52.

## VI.    Discussion

The issues raised by the defendants in their response to the motion for summary judgment are, as the magistrate judge correctly noted:

> (1) whether the Guaranty Agreements are enforceable against Andre Smith and Ballard Thaxton, and if so,
>
> (2) whether Sections 16 and 18(I) conflict with each other and create an ambiguity regarding recoverable damages; and
>
> (3) whether the liquidated-damages provision is unenforceable.[4]

The License Agreements expressly provide that they are governed by Tennessee law, except to the extent federal trademark or other federal law applies. (License Agreements § 18.G.) Each of the issues articulated above concerns the proper interpretation of the License and Guaranty Agreements. The Court must therefore consider the rules of contract interpretation under Tennessee law. The interpretation of a contract is a question of law and not one of fact. *Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). Each provision must be construed in light of the entire agreement, and the language in each provision must be given its natural and ordinary meaning. *Buettner v. Buettner*, 183 S.W.3d 354, 359 (Tenn. Ct. App. 2005). When interpreting contracts, the courts' aim is to ascertain and

---

[4] The defendants also raised the question of jurisdiction, asserting that the amount in controversy as pleaded in the complaint was less than $75,000 such that diversity jurisdiction was lacking from the outset, and that they have "de-identified the restaurants in question," such that there is a question as to whether the Court has subject matter jurisdiction over this matter. (ECF No. 29, at 2.) In its reply brief, the plaintiff gave short shrift to this argument, noting in a footnote that, even if "that is the case, Shoney's still has federal trademark claims pending for Defendants' failure to do so in a timely manner. Further, even if it were to dismiss those claims, this Court has supplemental jurisdiction over Shoney's related breach of contract claims." (ECF No. 33, at 10 n.2.) The magistrate judge overlooked this footnote (*see* ECF No. 68, at 12 n.6), but noted in his own footnote that the plaintiff also invoked the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), which give the Court jurisdiction over civil actions relating to copyrights and trademarks. (ECF No. 68, at 6 n.3.). In any event, defendants have not objected to this finding, and this Court agrees that the Court may properly exercise supplemental jurisdiction over the plaintiff's state-law breach-of-contract claims.

give effect to the parties' intent. *Id.* at 358–58 (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002)). If a contract is unambiguous, a court must interpret it as written and not in accordance with a party's unexpressed intent. *Pitt*, 90 S.W.2d at 252; *Sutton v. First Nat'l Bank of Crossville*, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981) (citations omitted).

Additionally, where a contract is unambiguous, the court may not look beyond its four corners to ascertain the parties' intention. *Rogers v. First Tenn. Bank Nat'l Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987); *Bokor v. Holder*, 722 S.W.2d 676, 679 (Tenn. Ct. App. 1986). When parties reduce their agreement to writing, the law favors enforcing these agreements as written. *Bob Pearsall Motors, Inc. v. Regal-Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Stated another way, the court, when interpreting a contract, "does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." *Union Planters Nat'l Bank v. Am. Home Assur. Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993) (citations omitted).

The courts' obligation is to interpret the contract as presented, but not to relieve a party of its obligations because the obligation proves to be onerous or burdensome. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002); 28 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 70:209, at 232 (4th ed. 2003) ("Courts are not in the business of rewriting contracts to bail out parties who have failed to prudently construct their business transactions."). Tennessee law plainly reflects the public policy giving parties the freedom to strike their own bargains. *Baugh v. Novak*, 340 S.W.3d 372, 383 (Tenn. 2011) (citing 21 Steven W. Feldman, *Tennessee Practice: Contract Law & Practice* § 1:6, at 17 (2006)). Similarly, the courts are "not at liberty to make a new contract for parties who have spoken for themselves." *Smithart v. John Hancock Mut. Life Ins. Co.*, 71 S.W.2d 1059, 1063 (Tenn. 1934).

However, where a provision is ambiguous—that is, susceptible of more than one reasonable interpretation—the parties' intent cannot be determined by a literal interpretation of the language. *Planters Gin Co.*, 78 S.W.3d at 890. In this situation, the court must resort to other rules of construction. *Id.* One such rule of construction is *expressio unius est exclusio alterius*, which means that the expression of one thing implies the exclusion of others. *Williams v. Larry Stovesand Lincoln Mercury, Inc.*, No. M2014-

00004-COA-R3-CV, 2014 WL 5308634, at *5 (Tenn. Ct. App. Oct. 15, 2014) (citing Bryan A. Garner, *A Dictionary of Modern Legal Usage* 432 (2d ed. 1987)). Only if ambiguity remains after using the rules of construction does the legal meaning of the contract become a question of fact. *Id.* Then, the court must examine other evidence to surmise the parties' intention, including negotiations leading up to the contracts, formation, the course of conduct between the parties, and any statements of the parties that could guide the court in ascertaining the parties' intentions. *Id.* (citing *Pinson & Associates, Inc. v. Kreal*, 800 S.W.2d 486, 487 (Tenn. Ct. App. 1990); *Jackson v. Miller*, 776 S.W.2d 115, 118 (Tenn. Ct. App. 1989); *Patterson v. Anderson Motor Co.*, 319 S.W.2d 492, 297 (Tenn. Ct. App. 1958)).

Where several instruments are executed as part of the same agreement, the court must construe them with reference to each other. *Real Estate Mgmt. v. Giles*, 293 S.W.2d 596, 599 (Tenn. 1956). Where an executed agreement refers to the other documents, all of the documents must be construed together as the contract of the parties. *Smith v. Futris*, No. W1998-00181-COA-R3-CV, 2001 WL 432497 (Tenn. Ct. App. April 23, 2001); *Hardeman Cnty. Bank v. Stallings*, 917 S.W.2d 695, 698 (Tenn. Ct. App. 1995); *Phenix Square, Ltd. v. Wright*, 682 S.W.2d 518, 520 (Tenn. Ct. App. 1984).

Finally, it is well settled in Tennessee that where the terms of an agreement are unambiguous, the parol evidence rule bars extraneous evidence used "to alter, vary, or qualify the plain meaning of an unambiguous written contract." *Staubach Retail Servs.–Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005) (quoting *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)). The parol-evidence rule also distinguishes between patent and latent ambiguities. A patent ambiguity is one "produced by the uncertainty, contradictoriness, or deficiency in the language of an instrument." *Mitchell v. Chance*, 149 S.W.3d 40, 44 (Tenn. Ct. App. 2004) (quoting *Weatherhead v. Sewell*, 28 Tenn. (9 Hum.) 272, 295–96 (1848)). In turn, a latent ambiguity exists:

> [W]here the equivocality of expression, or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words or phrases made use of.

*Id.* (quoting *Weatherhead*, 28 Tenn. at 295); *see also Teague v. Sowder*, 114 S.W. 484, 488–89 (Tenn. 1908). Parol evidence is not admissible to remove a patent ambiguity, but it is admissible to remove a

latent ambiguity. *Id.* at 44 (citing *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992)); *see also Ward v. Berry & Assocs., Inc.*, 614 S.W.2d 372, 374 (Tenn. Ct. App. 1981).

With these principles in mind, the Court turns to the contract at issue here.

**A.     The Transferability of the Guaranty Agreements**

As set forth above, Section 12 of the License Agreements expressly provides that the agreements are assignable at will by Shoney's, Inc., the original licensor, and there is no dispute that SNA, as successor in interest to Shoney's, Inc., has the right to enforce the License Agreements against S&T, the corporate entity that is the actually licensee. The individuals, Andre Smith and Ballard Thaxton, did not execute the License Agreements in their individual capacity. They are, however, parties to the Guaranty Agreements. The defendants argue that the Guaranty Agreements are between them and Shoney's, Inc. and that the Guaranty Agreements, unlike the License Agreements, do not contain transferability provisions. They argue that their guarantee was exclusive to Shoney's Inc. and that they never agreed to guarantee S&T's obligations to SNA by written contract or otherwise. The defendants further insist that, if the parties had intended to make the Guaranty Agreements freely assignable, the transferability language included in the License Agreements would have also been included in the Guaranty Agreements. Because it was not, the defendants contend, Shoney's Inc. had no right or authority to assign their obligations under the Guaranty Agreements to a third party without obtaining their consent, such that the assignment is void.

This argument is not supported by the language of the contracts or the applicable state law. First, as set forth above, where several instruments are executed as part of the same agreement, the Court must construe them with reference to each other, and when an executed agreement refers to the other documents, all of the documents must be construed together as the contract of the parties. The License Agreements and Guaranty Agreements were executed together and clearly cross-reference each other. The Court must therefore construe each License Agreement and its attached Guaranty Agreement as one single contract.

The language of the Agreements reinforces this conclusion. Section 18.K of the License Agreements provides that "[t]he preambles and exhibits are a part of this Agreement, which constitutes the entire agreement of the parties." (License Agreements § 18.K.). Section 13 of the License

Agreements expressly required each person holding an ownership interest of 10% or more in S&T, "execute the Guaranty Agreement attached as Exhibit B . . . to this Agreement." (License Agreements § 13). As set forth in Exhibit C to each License Agreement, Mr. Thaxton owned a 51% interest in S&T and Mr. Smith owned a 49% interest, and each "adopted and agreed to comply with" the requirements of Section 13. (License Agreements Ex. C).

Also in Exhibit C to the License Agreements, Messrs. Smith and Thaxton expressly agreed that the License Agreements are transferrable (Section 12) and that the exhibits formed part of the License Agreements (Section 18): "[Each] of the following persons [Ballard Thaxton and Andre Smith] hereby adopts and agrees to comply with the terms and provisions of Sections 4, 6, 12, 13, 17, 18 and 19 of the License Agreement." (License Agreements Ex. C.)

And Messrs. Smith and Thaxton indeed executed the Guaranty Agreements, which constitute Exhibit B to the License Agreements. (License Agreements Ex. B). The Guaranty Agreements themselves state in relevant part:

> Guarantors [Andre Smith and Ballard Thaxton] hereby guarantee the timely performance of *all of the obligations of Smith & Thaxton, Inc.* (the "Franchisee") under th[e] License Agreement[s] dated as of January 20, 2003 (the 'License Agreement[s]'), including the prompt payment when due of all license fees, royalty fees, and production and regional co-op fund contributions.

(Guaranty Agreement § 1, ECF No. 1-3, at 42 (emphasis added).) In other words, the Guaranty Agreements had no need to include an express transferability provision, because the Guarantors guaranteed S&T's *obligations under the License Agreements.* Because the License Agreements were unambiguously assignable by Shoney's, Inc., and the defendants agreed to guarantee S&T's obligations under the License Agreements, the Guaranty Agreements clearly were automatically transferable in the event the License Agreements themselves were transferred.

Simply put, the Court finds no ambiguity in the parties' agreements regarding the transferability of Shoney's, Inc.'s rights under the Guaranty Agreements. The defendants expressly agreed that any person who purchased the License Agreements from Shoney's was also purchasing the Guaranty Agreements attached as Exhibit B to those Agreements. The plain language and the clear intent of the License Agreements, including their exhibits, was that Shoney's, Inc. had the right to transfer its rights under the Guaranty Agreements to its successors. The defendants' argument and the magistrate judge's

finding ignores the plain language of the parties' written agreements, including the fact that the Guaranty Agreements are part of the License Agreements for purposes of assignment.

The Court finds that there are no disputed issues of material fact and that, as a matter of contract law, the defendants Andre Smith and Ballard Thaxton remain personally liable based on the Guaranty Agreements for S&T's breach of its obligations to SNA under the License Agreements.

**B.    Whether the Contract Is Ambiguous.**

The contract provisions at issue are Sections 16, 17.B, and 18.I:

16.    <u>DAMAGES</u>

> Except as otherwise provided in this Agreement, if this Agreement and the License granted by this Agreement terminate under any of the provisions of Section 15 of this Agreement, you promptly will pay us a lump sum equal to the royalty fees and production fund contributions payable to us during the 13 periods [1 year] immediately preceding the termination. If we cannot determine the amount payable to us by you because of your failure to submit some or all of your Gross Sales reports as required by Section 10 of this Agreement, we may estimate the Gross Sales of your Restaurant for the applicable periods described above for the purposes of computing the amount payable to us by you under this Section 16.[5]

(Addendum to License Agreements § 4, ECF No. 1-3, at 48.)

> You acknowledge that the determination of our actual damages caused by the termination of this Agreement as set forth above would be extremely difficult, if not impossible, and that the liquidated damages provided for above represent a fair and reasonable estimate of those damages.

(License Agreements § 16, ECF No. 1-3, at 30.)

17.    <u>COVENANT NOT TO COMPETE; RIGHTS AND OBLIGATIONS UPON TERMINATION OR EXPIRATION OF THE LICENSE</u>

. . . .

> B.    <u>PAYMENT OF AMOUNTS OWED TO COMPANY</u>

> You must pay to us within 15 days after the effective date of termination or expiration of this Agreement, or any later date that the amounts due to us are determined, all royalty fees; production and regional co-op fund contributions; amounts owed for your purchases from us or our subsidiaries and affiliates, predecessors, successors and assigns; interest due on any of the foregoing items; and all other amounts owed to us or our subsidiaries and affiliates under this Agreement or otherwise.

---

[5] Section 16 of the original License Agreements was amended pursuant to an Addendum appended to the Agreements, also dated January 20, 2003. The original version called for liquidated damages "equal to the royalty fees and product fund contributions payable to us during the 39 periods [3 years] immediately preceding the termination." (*See* License Agreements § 16.)

(License Agreements § 17.B, ECF No. 1-3, at 31.)

18.    ENFORCEMENT

. . . .

I.    WAIVER OF CERTAIN DAMAGES

Except for your obligations to indemnify us under this Agreement and claims we bring against you for your unauthorized use of the Marks, unauthorized use or disclosure of any Confidential Information, or breach of your non-competition covenants, we and you and your owners waive any right to or claim for punitive, consequential, multiple, incidental or other damages in excess of the economic damages actually sustained, whether asserted as a related or independent tort, as a breach of contract, or as any other claim or cause of action based on statutory or common law.

(License Agreements § 18.I, ECF No. 1-3, at 37.)

The defendants argue that Sections 16 and 18.I conflict with each other, creating a patent ambiguity that must be resolved against SNA as the drafter of the contract. (ECF No. 29, at 3 (citing *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 423 (6th Cir. 2008) ("[A]mbiguities in contracts should be construed against the drafter.")). Under Section 18.I, the defendants contend, the plaintiff is entitled only to "economic damages actually sustained," and the plaintiff has not presented any proof regarding its actual economic damages. The defendants further argue that the liquidated-damages provision in Section 16 does not yield a calculation of lost profits; instead, it provides for a calculation of gross (rather than net) economic damages, and includes the Production Fund fees, which are not an asset of the plaintiff. (*See* License Agreements § 9.A, ECF No. 1-3, at 18 ("The Production Fund is not an asset of [Shoney's, Inc."].")

In its reply brief, the plaintiff argues that the contract contains no ambiguity and that: (1) it would be legally entitled to its actual damages in the event of a breach by the defendants and termination of the License Agreements under Section 15; (2) Section 16 recognizes that the determination of actual damages caused by termination of the Agreement "would be extremely difficult if not impossible"; the parties therefore agreed in Section 16 that "the royalty fees and production fund contributions payable to [SNA] during the 13 periods immediately preceding the termination" constituted a "fair and reasonable estimate of those damages" (License Agreements § 16); and (3) "Section 18.I then makes it clear that the plaintiff is not entitled to recover punitive, consequential, incidental or other damages *on top of* the

damages it is entitled to recover under Section 16 (and Section 17.B) of the License Agreements" in the event of breach. (ECF No. 33, at 3.)

It is well settled under Tennessee law that provisions in a contract "should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Fisher v. Revell*, 343 S.W.3d 776, 779 (Tenn. Ct. App. 2009) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). Construing Section 18.I in the manner suggested by the defendants would require the Court to completely disregard Section 16, a result that is clearly disfavored by the law and the general rules of contract interpretation. Construing the provisions harmoniously with each other, the Court finds that Section 18 forecloses the possibility of punitive, consequential, incidental or other damages in addition to those damages contemplated by Sections 16 and Section 17.B of the License Agreements. Section 18.I's reference to recovery of "economic damages actually sustained" must be read with reference to the recognition, in Section 16, that "the determination of [SNA's] actual damages caused by the termination of this Agreement . . . would be extremely difficult, if not impossible, and that the liquidated damages provided for above represent a fair and reasonable estimate of those damages." The Court construes Section 18 to permit the recovery of the damages contemplated by Section 16, but only those damages contemplated by Section 16. In addition, because the funds payable under Section 17.B are not damages but instead amounts actually owed by the franchisor regardless of whether a breach occurred, Section 18.I clearly does not bar recuperation of the amounts owed under that provision.

In sum, the Court rejects the defendants' claim that the contract is ambiguous and its assertion that Section 18.I therefore must be construed to prohibit the damages contemplated by Section 16.

### C.    The Enforceability of the Liquidated-damages Provision

The defendants argue that the liquidated-damages provisions are enforceable only if "the liquidated damages specified were a reasonable prediction of what a breach would cost the injured party in light of the circumstances at the time the contract was formed." (ECF No. 29, at 5 (quoting *United States v. Ponnapula*, 246 F. 3d 576, 584 (6th Cir. 2001) (applying Tennessee law)). The assert that the damages provision in Section 16 is not a reasonable prediction of what a breach would cost the plaintiff, because it purports to mandate payment of production fund contributions in addition to royalty fees. They

point out that the production fund is not an asset of the plaintiff's and argue on that basis that production fund contributions could not be part of plaintiff's lost profits. (ECF No. 29, at 5.)

The term "liquidated damages" is defined as a "sum stipulated and agreed upon by the parties at the time they enter their contract, to be paid to compensate for injuries should a breach occur." *Guiliano*, 995 S.W.2d at 96 (citation omitted). The fundamental purpose of a liquidated-damages provision is to provide a means of compensation in the event of a breach where damages would be indeterminable or otherwise difficult to prove. *Id.* at 98. Although the contract at issue in this case does not specifically refer to "liquidated damages," Section 16 clearly is a liquidated-damages provision. *See id.* at 97 ("[A] contractual provision need not explicitly include the term 'liquidated damages' to constitute a liquidated-damages provision.").

The Tennessee Supreme Court has recognized that liquidated-damages provisions implicate "two important issues . . . : the freedom of parties to bargain for and to agree upon terms such as liquidated damages and the limitations set by public policy." *Id.* at 100. Thus, liquidated-damages clauses are generally enforceable unless such a "provision serves only to penalize the defaulting party for a breach of contract." *Id.* at 98 (citation omitted). A provision in a contract that works as a forfeiture or penalty will be deemed unenforceable as violating established public policy. A "penalty" in a contract, as distinguished from liquidated damages, is defined as "a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of non-performance, and it involves the idea of punishment." *Harmon v. Egger*s, 699 S.W.2d 159, 163 (Tenn. Ct. App. 1985) (overruled on other grounds) (quoting 22 Am. Jur. 2d Damages § 213 (1965)). On the other hand, "[i]f the [contract] provision is a reasonable estimate of the damages that would occur from a breach, then the provision is normally construed as an enforceable stipulation for liquidated damages." *Guiliano*, 995 S.W.2d at 98 (citation omitted).

Courts considering the enforceability of a liquidated-damages provision "must focus on the intentions of the parties based upon the language in the contract and the circumstances that existed at the time of contract formation." *Guiliano*, 995 S.W.2d at 100 (footnote omitted). The circumstances courts should consider may include (1) "whether the liquidated sum was a reasonable estimate of potential damages," and (2) "whether actual damages were indeterminable or difficult to measure at the time the

parties entered into the contract." *Id.* at 100–01 (citing *V.L. Nicholson Co. v. Transcon Inv. & Financial Ltd.*, 595 S.W.2d 474, 484 (Tenn. 1980)). Assuming those factors are satisfied and the contract provision "reflects the parties' intentions to compensate in the event of a breach," then it should be "upheld as a reasonable agreement for liquidated damages. However, if the provision and circumstances indicate that the parties intended merely to penalize for a breach of contract, then the provision is unenforceable as against public policy." *Id.* at 101. Notably, under this approach, "the amount of actual damages at the time of breach is of little or no relevance to whether the clause is an impermissible penalty." *Id.* at 99.

Tennessee courts have regularly upheld liquidated-damages provisions at the summary judgment stage. *See, e.g.*, *Teter v. Repub. Parking Sys., Inc.*, 181 S.W.3d 330, 343–44 (Tenn. 2005) (finding summary judgment appropriate on question of enforceability of liquidated-damages provision in contract but reversing on other grounds), *Guiliano*, 995 S.W.2d at 101 (reinstating trial court's award of summary judgment to the plaintiff on his claim for liquidated damages); *see also Raley v. Jackson*, No. 3:04-0877, 2007 WL 1725254 (M.D. Tenn. June 12, 2007) (Trauger, J.) (applying Tennessee law and granting counterplaintiff's motion for summary judgment enforcing the liquidated-damages provision of the parties' contract). And this Court has previously found a liquidated-damages provision in a Shoney's contract to be enforceable. *See Shoney's, Inc. v. Morris*, 100 F. Supp. 2d 769, 775–77 (M.D. Tenn. 1999) (Higgins, J.) (rejecting franchisee's argument that the "future royalties" clause in the six license agreements was "unenforceable as against public policy, . . . unconscionable, [or failed] to meet the reasonable expectations of the parties," and granting summary judgment to the plaintiff, who sought to recover the full amount of royalties payable over the remaining fifteen years of the contract term).

In this case, neither party presented any extrinsic evidence regarding "the circumstances that existed at the time of contract formation." *Guiliano*, 995 S.W.2d at 100. However, pursuant to the express language of the contract, the parties stipulated that " the determination of [SNA's] actual damages caused by [breach] would be extremely difficult, if not impossible, and that the liquidated damages provided for above represent a fair and reasonable estimate of those damages." (License Agreements § 16.)

The defendants' attempt to refute the clear terms of the contract is feeble at best. The defendants insist that the estimation was not reasonable because the liquidated-damages sum included an amount equal to both the royalty fees and production fund contributions payable to SNA during the one-year

period immediately preceding termination. The defendants seem to concede that the royalty fees alone would have been reasonable; the contend only that including the production fund contributions as well placed the estimated damages over and above what would have been a reasonable estimation of SNA's damages, because the production fund contributions were not an asset of SNA's.

This argument is unavailing. The production fund fees are addressed in Section 9.A of the License Agreements. This clause required SNA to maintain and administer "a National Production Fund ('the 'Production Fund') for the marketing programs [SNA] deem[ed] necessary or appropriate." (License Agreements § 9.1.) It is reasonable to assume, based on this clause, that SNA's commitment to provide advertising for its licensees was ongoing and that its advertising costs did not immediately diminish as a result of the termination of one or two license agreements. The inclusion of the advertising fee (which amounts to $8,071 of the total damages of $59,430.27 sought by SNA) did not *per se* render the liquidated-damages provision unreasonable.

The defendants further argue that damages are inherently a question of fact that cannot be resolved on summary judgment and that the plaintiff's proof of damages, supported only by the "conclusory" declaration of Catherine Hite and the documentation attached to the complaint, is insufficient. The defendants, however, do not refute any part of Catherine Hite's declaration or the plaintiff's assertions regarding the damages owed, and they have presented no evidence to suggest that the liquidated-damages clause at Section 16 of the License Agreements functions as a penalty or unenforceable forfeiture. A dispute of fact is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). The defendants have not effectively refuted the evidence offered by the plaintiff.

The defendants' arguments, in short, are without merit. They have not established the existence of a material factual dispute, and the plaintiff is entitled to judgment as a matter of law on its breach-of-contract claims.

## VII.   Conclusion

The plaintiff did not move for summary judgment on the issue of the alleged trademark and service mark violations; instead, it moves for summary judgment only on its breach-of-contract claims. Because the renewed motion for summary judgment has been pending for 18 months and SNA has not

during the intervening time period taken any action to pursue its trademark-based claims, the Court finds that the plaintiff has abandoned its trademark claims. The Court will dismiss those claims with prejudice.

Regarding the breach-of-contract claims, over which this Court has continued to exercise supplemental jurisdiction, a default judgment has already been entered against defendant Smith & Thaxton, Inc. in the amount of $59,430.27, plus prejudgment interest in the amount of $168.20 and post-judgment interest at the statutory rate. (ECF No. 93.) Thus, the only issue still pending before the Court is the liability of the individual defendants, Ballard Thaxton (or his estate, now represented by his wife, Brenda K. Thaxton) and Andre Smith under the Guaranty Agreements. The Court has concluded that SNA has the right to enforce the Guaranty Agreements, and that Messrs. Smith and Thaxton (or his estate) are individually liable, jointly and severally, to SNA under the Guaranty Agreements for the damages already assessed against S&T. The Court has further concluded that the liquidated-damages provision in the License Agreements is likewise enforceable, and that SNA is entitled to the full amount of damages sought in its complaint and the renewed motion for summary judgment.

The renewed motion for summary judgment will therefore be granted in its entirety. An appropriate order will be filed in conjunction with this motion.

KEVIN H. SHARP
Chief Judge
United States District Court